UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARTIN M. KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20 CV 889 RWS |
| | ) | |
| KILOLO KIJAKAZI[1], | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Martin Kelly brings this action seeking judicial review of the

Commissioner's decision denying his applications for disability insurance and

Supplemental Security Income under Titles II and XVI of the Social Security Act,

42 U.S.C. §§ 401, 1381.  Sections 205(g) and 1631(c)(3) of the Act, 42 U.S.C. §§

405(g) and 1383(c)(3), provide for judicial review of a final decision of the

Commissioner.  Because the Commissioner's final decision is supported by

substantial evidence on the record as a whole, I will affirm the decision of the

Commissioner.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant
to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for
Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by
reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## Procedural History

Plaintiff was born in 1971 and filed his applications on October 3, 2017. (Tr. 77, 214.)  He alleges he became disabled beginning August 1, 2017, because of traumatic brain injury, balance and coordination problems, difficulty concentrating, and anxiety.[2]   (Tr. 278.)

Plaintiff's applications were initially denied on May 1, 2018.  (Tr. 77.)  After a hearing before an ALJ on July 3, 2019, the ALJ issued a decision denying benefits on August 29, 2019.  (Tr. 77-88.)  On June 3, 2020, the Appeals Council denied plaintiff's request for review.  (Tr. 1-4.)  The ALJ's decision is now the final decision of the Commissioner.  42 U.S.C. §§ 405(g) and 1383(c)(3).

In this action for judicial review, plaintiff contends that the ALJ should have obtained an updated medical opinion to determine his residual functional capacity (RFC).  He asks that I reverse the Commissioner's final decision and remand the matter for further evaluation.  For the reasons that follow, I will affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts (ECF #25) to the extent they are admitted by the

---

[2] Plaintiff had a motorcycle accident while intoxicated on August 1, 2017, resulting in brain injuries.  (Tr. 352-57.)  Plaintiff had a scooter accident while drinking on May 29, 2018, resulting in a fractured collarbone.  (Tr. 448-59.)

Commissioner (ECF #30-1), as well as the additional facts submitted by the

Commissioner (ECF #30-2) as they are not contested by plaintiff.  Additional

specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A.   <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act,

plaintiff must prove that he is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211,

1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552,

555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only

if [his] physical or mental impairment or impairments are of such severity that [he]

is not only unable to do [his] previous work but cannot, considering [his] age,

education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a

five-step evaluation process.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482

U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the

claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment(s) is not severe, then he is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  "[Substantial evidence] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal

quotation marks and citations omitted). Determining whether there is substantial

evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th

Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well

as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590

F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to

draw two inconsistent positions and the Commissioner has adopted one of those

positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696

F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision

merely because substantial evidence could also support a contrary outcome.

*McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is

never free to ignore the subjective testimony of the claimant, even if it is

uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d

1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's

subjective complaints when they are inconsistent with the record as a whole. *See*

*e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the

subjective complaints, the ALJ is required to consider whether a claimant's

subjective complaints are consistent with the medical evidence. *See Polaski v.*

*Heckler*, 739 F.2d 1320 (8th Cir. 1984) (listing factors such as the claimant's daily activities, the duration, frequency, and intensity of the pain, precipitating and aggravating factors, dosage, effectiveness and side effects of medication, and functional restrictions).[3]  When an ALJ gives good reasons for the findings, the court will usually defer to the ALJ's finding.  *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.    ALJ's Decision

In his written decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 1, 2017.  (Tr. 79.) The ALJ found that plaintiff had the following severe impairments: traumatic brain injury, nonunion fracture of the left distal clavicle, cervical degenerative disc disease, and obesity.  (Tr. 80.)  The ALJ found plaintiff had the non-severe impairments of coagulation disorder and substance abuse.  (Tr. 80.)  The ALJ

---

[3] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character.  However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record."  *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

determined that plaintiff's impairments or combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 82.) The ALJ found plaintiff to have the residual functional capacity (RFC) to perform light work with the following limitations:

> [Claimant can] lift or carry 20 pounds occasionally and ten pounds frequently with the right upper extremity. He can lift or carry ten pounds occasionally with the left upper extremity. He can push or pull with all extremities except the left upper extremity in the weights given for lifting and carrying with the right upper extremity. He can do no overhead work with the left upper extremity. He is able to occasionally balance. He should not work around hazards such as dangerous machinery or at unprotected heights. He can frequently bend and stoop. He cannot kneel, crouch, or crawl. He cannot use ladders, ropes, or scaffolds. He cannot drive motorized equipment as a job duty. He would use a cane to ambulate away from the workstation for balance. He is right hand dominant.

(Tr. 82-83.) The ALJ relied upon vocational expert testimony to support a conclusion that plaintiff could perform his past relevant work as a telephone solicitor and alternatively that there were significant jobs in the economy of packager, document preparer, and circuit board assembler that plaintiff could perform. (Tr. 86-87.) The ALJ therefore found plaintiff not to be disabled. (Tr. 88.)

Plaintiff claims that this decision is not supported by substantial evidence because the ALJ should have obtained an updated medical opinion to determine his RFC.

C.    RFC

Plaintiff argues that the ALJ should have obtained an updated medical

opinion which addressed his ability to function in the workplace after January 3,

2018, before fashioning his RFC.  RFC is defined as "what [the claimant] can still

do" despite his "physical or mental limitations."  20 C.F.R. § 404.1545(a).  The

ALJ must determine a claimant's RFC based on all of the relevant evidence,

including the medical records, observations of treating physicians and others, and

an individual's own description of his limitations.  *McKinney v. Apfel*, 228 F.3d

860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir.

1995)).

On April 27, 2018, Kevin Threlkeld, M.D., an agency medical consultant,

reviewed plaintiff's records as of January 3, 2018, and opined that plaintiff could

perform a range of light work with no climbing of ladders, ropes, or scaffolds;

frequent climbing of ramps and stairs; frequent stooping, kneeling, crouching, and

crawling; occasional balancing; and avoiding concentrated exposure to hazards.

(Tr. 12729.).   The ALJ found Dr. Threlkeld's opinion persuasive but concluded

that plaintiff's RFC should be more restrictive than Dr. Threlkeld's

recommendations based upon additional medical evidence that became available

after his opinion was rendered, including evidence regarding the nonunion of

plaintiff's left distal clavicle, cervical degenerative disc disease, and unresolved

8

vertigo. (Tr. 85-86.) The ALJ went on to fashion a more restrictive RFC than

what was recommended by Dr. Threlkeld based upon these additional limitations.

(Tr. 82-86.) According to plaintiff, the ALJ should have ordered a consultative

examination to determine how plaintiff's nonunion of the left clavicle and

degenerative disc disease in the cervical spine affected his functional abilities

before fashioning his RFC, and that in failing to do so the ALJ improperly

substituted his own independent medical findings for that of a medical source

when fashioning his RFC. Plaintiff also argues that the ALJ ignored evidence of

his dysmetria.

Here, the ALJ properly formulated plaintiff's RFC only after evaluating his

subjective symptoms and discussing the relevant evidence, including his testimony,

the medical evidence, and his daily activities. After consideration of all this

evidence, the ALJ concluded that plaintiff retained the capacity to perform light

work, with significant modifications tailored to his credible limitations. In so

doing, he did not substantially err.

Plaintiff incorrectly argues that the ALJ's RFC is not supported by

substantial evidence unless there is a medical opinion which addresses his specific

functional limitations. Although the RFC is a medical question and must be

supported by some medical evidence, "there is no requirement that an RFC finding

be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932

(8th Cir. 2016).   Instead, the RFC must be determined by the ALJ based on all the relevant evidence, and the ALJ properly evaluated Dr. Threlkeld's opinion, along with all the relevant medical evidence, using the new regulations applicable to plaintiff's claim.  *See* 20 C.F.R. § 416.920c(a) (2017) (when evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources.").  "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."  *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (internal quotation marks and citation omitted); *See* 20 C.F.R. § 416.920b(c)(1)-(3) (2017) (statements on issues reserved to the Commissioner, such as statements that a claimant is or is not disabled, are deemed evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled.").

While the ALJ does have a duty to fully and fairly develop the record, the ALJ is not required to obtain additional medical evidence if the evidence of record provides a sufficient basis for the ALJ's decision.  *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011).   Moreover, it is ultimately plaintiff's burden to establish his RFC, and he failed to carry this burden by producing any evidence that his RFC

10

should be more limited because of his fractured collarbone, degenerative disc disease, and dysmetria. *Hensley*, 829 F.3d at 932. Here, the ALJ held the record open for 30 days following the hearing to allow plaintiff to submit additional medical evidence in support of his claims. (Tr. 77.) While plaintiff provided updated records about his knee issues, he did not provide the ALJ with any medical opinion which addressed functional limitations caused by the nonunion of his left clavicle, degenerative disc disease in the cervical spine, or his dysmetria.

The ALJ considered not only Dr. Threlkeld's opinion, but also the objective medical evidence of record regarding plaintiff's nonunion of the left clavicle and degenerative disc disease in the cervical spine, which he specifically considered and factored into his evaluation of plaintiff's RFC. To account for plaintiff's fractured collarbone and degenerative disc disease, the ALJ limited plaintiff "to the performance of light work, with lifting, carrying, pushing and pulling twenty pounds occasionally and ten pounds frequently with right upper extremity and both lower extremities, and lifting and carrying ten pounds occasionally with the left upper extremity, but no pushing or pulling with the left upper extremity." (Tr. 85.) The ALJ also "limited [plaintiff] to no overhead work with the left upper extremity." (Tr. 85.) These additional limitations on plaintiff's abilities were consistent with the medical evidence of record which demonstrated that no treatment was recommended for his collarbone fracture or prescribed for his

11

degenerative disc disease, which MRI findings classified as mild at C3-4 and C4-5 and moderate at C5-6 and C6-7 in his cervical spine and mild in his lumbar spine. (Tr. 48, 530.)   Plaintiff's examination by Steven Radel, M.D. on May 31, 2019, was unremarkable.  Plaintiff's neck was supple with a normal range of motion with a decreased range of motion in his cervical and lumbar spine.  (Tr. 553-54.) Plaintiff was observed to have full range of motion with tenderness and spasm in his cervical spine on July 2, 2019.  (Tr. 542.)   On July 30, 2019, plaintiff was examined by Ryan William Pappas, D.O. who observed plaintiff to have a normal range of motion in his head and neck, with normal gait and a steady station.  (Tr. 12.)

Plaintiff complains that the ALJ mentions his primary care physician, David M. Reisler, M.D., found no evidence of dysmetria during his May 22, 2018 examination of plaintiff, without discussing that a different physician observed dysmetria during examination on July 18, 2018.  (Tr. 439.)   However, the ALJ is not obligated to discuss every piece of evidence in the record, and the failure to cite specific evidence does not mean that it was not considered.  *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (internal quotation marks and citation omitted).  Moreover, the ALJ specifically accounted for plaintiff's limitations with balance by requiring the use of a cane to ambulate from his workstation, limiting him to balancing only occasionally, and precluding him from driving, working

around hazards, unprotected heights, or dangerous machinery, kneeling, crouching,

crawling, or climbing ladders, ropes or scaffolds.  (Tr. 84-85.)

Plaintiff also points to complaints of back pain and a decreased range of

motion in his medical records as evidence that the ALJ failed to adequately

evaluate his RFC.  However, remand is not required merely because plaintiff may

disagree with the ALJ's weighing of the evidence or can point to some evidence in

the record which may support his position.  *See Fentress v. Berryhill*, 854 F.3d

1016, 1021 (8th Cir. 2017).  Although plaintiff believes that the ALJ should have

assessed the medical evidence differently to support greater limitations or obtained

an additional medical opinion, it is not my role to reweigh the medical evidence of

plaintiff's limitations considered by the ALJ in his determination of plaintiff's

RFC.  *Hensley*, 829 F.3d at 934.  It is the duty of the ALJ to weigh conflicting

evidence and to resolve disagreements among medical opinions.  *Cline v. Colvin*,

771 F.3d 1098, 1103 (8th Cir. 2014).  Under these circumstances, the ALJ did not

err in failing to obtain a more updated medical opinion before fashioning plaintiff's

RFC, and his decision is entitled to deference.

The ALJ evaluated all of the medical evidence of record and adequately

explained his reasons for the weight given this evidence in a manner consistent

with the new regulations.  The ALJ did not simply adopt a light work RFC

wholesale, but rather substantially restricted plaintiff's RFC based on his credible

13

limitations of record.  Good reasons and substantial evidence in the record as a

whole support the ALJ's RFC determination, so I will affirm the decision of the

Commissioner as within a "reasonable zone of choice." *Fentress*, 854 F.3d at 1021

(citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

Because substantial evidence on the record as a whole supports the ALJ's

RFC determination, the decision of the Commissioner must be affirmed.

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task

is to determine whether the decision is supported by substantial evidence on the

record as a whole.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).  "Substantial

evidence is defined to include such relevant evidence as a reasonable mind would

find adequate to support the Commissioner's conclusion." *Id.*  Where substantial

evidence supports the Commissioner's decision, this Court may not reverse the

decision merely because substantial evidence exists in the record that would have

supported a contrary outcome or because another court could have decided the case

differently.  *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner*

*v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of

record sufficient to support the ALJ's determination that plaintiff was not disabled.

Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed.  *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Martin Kelly's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.


RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE


Dated this 8th day of September, 2021.

15